COPY

| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | SUMMONS | CASE FILE NUMBER<br>25-0646-I |
|---|---|---|
| **PLAINTIFF**<br>Metropolitan Government of Nashville and Davidson County, Tennessee | **DEFENDANT**<br>Youth Opportunity Investments, LLC and Youth Opportunities of America, LLC | |

| TO: (NAME AND ADDRESS OF DEFENDANT)<br><br>Youth Opportunity Investments, LLC<br>c/o Corporation Service Company<br>2908 Poston Avenue<br>Nashville, Tennessee 37203<br><br><br><br>List each defendant on a separate summons. | Method of Service:<br><br>☐ Certified Mail<br>☑ Davidson Co. Sheriff<br>☐ *Comm. Of Insurance<br>☐ *Secretary of State<br>☐ *Out of County Sheriff<br>☐ Private Process Server<br>☐ Other<br>*Attach Required Fees |
|---|---|

YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br>Kevin Klein<br>Klein Solomon Mills, PLLC<br>1322 Fourth Avenue North<br>Nashville, Tennessee 37208<br>(615) 60-4802 | FILED, ISSUED & ATTESTED<br>FOR CLERK USE ONLY  MAY - 6 2025<br><br>MARIA M. SALAS, Clerk and Master<br>By: 1 Public Square<br>Suite 308<br>Nashville, TN 37201<br><br>Deputy Clerk & Master |
|---|---|

## NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED<br><br><br>Sheriff |
|---|---|

***Submit one original plus one copy for each defendant to be served.

♿ADA Coordinator, Maria M. Salas (862-5710)

# RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served
☐ Not Served  _____
☐ Not Found
☐ Other _____

| Date of Return: | By: |
|---|---|
| Agency Address: | Sheriff/or other authorized person to serve process |

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____ 20___, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to the defendant _____. On the ___ day of _____, 20___, I received the return receipt, which had been signed by _____ on the _____ day of _____ 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| Sworn to and subscribed before me on this _____ day of _____, 20___. <br> Signature of ____ Notary Public or ____ Deputy Clerk <br><br> My Commission Expires: _____ | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |
|---|---|

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to:  Clerk & Master
 1 Public Square
 Suite 308
 Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| I, Maria M. Salas, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case. | MARIA M. SALAS, Clerk & Master <br> By: _____ <br> D.C. & M. |
|---|---|



IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | |
|---|---|
| THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE,<br><br>    Plaintiff,<br><br>v.<br><br>YOUTH OPPORTUNITY INVESTMENTS, LLC, and YOUTH OPPORTUNITIES OF AMERICA, LLC,<br><br>    Defendants. | Case No. 25-0646-T<br><br>CHANCELLOR<br><br>JURY DEMAND |

## COMPLAINT

The Metropolitan Government of Nashville and Davidson County, Tennessee, brings this Complaint against Youth Opportunity Investments, LLC, and Youth Opportunities of America, LLC:

## INTRODUCTION

In 2016, the Metropolitan Government entered into a contract with Youth Opportunity Investments, LLC ("YOI"), for YOI to manage a juvenile detention facility in Davidson County, Tennessee. In 2021, Metro renewed its agreement with YOI. The new contract term was 60 months, and the estimated value was $28,000,000. Unlike the 2016 contract, however, the 2021 contract allowed for financial penalties if YOI failed to fulfill certain requirements, including maintaining adequate staffing.

In July 2021, Gary Sallee, YOI's Chief Legal Officer, sent an email to several members of the Metropolitan Government, requesting that the YOI Agreement be assigned to "a sister company," Youth Opportunities of America, LLC ("YOA"). Sallee promised no change in services, as the two entities had the same owners, same address, and would have the same

managers, employees, and staff in Davidson County. Indeed, Sallee explained: "[t]he only noticeable difference will be the check from METRO will go to YOA instead of YOI."

Based on these representations, Metro permitted the assignment. Then, on May 6, 2022, YOA sent a letter to Metro stating that it was unilaterally terminating the contract as of June 5, 2022. YOA had no basis to terminate the contract, and its actions constitute a breach — indeed, a breach damaging Metro to the tune of $1,891,139 in increased facility management costs. And that is when Metro found out how different YOI and YOA are: YOI is a thriving business with numerous locations nationwide, and an estimated annual revenue of $300 million; YOA has and had virtually no assets or revenue.

Metro brings this suit to be made whole, and to hold YOI and YOA accountable. YOA had no legal basis to terminate the agreement, and its termination constitutes a breach. In addition, while the agreement was assigned to YOA, YOI remained responsible under Section 8.22 of the YOI Agreement, which states: "Any such assignment or transfer shall not release CONTRACTOR from its obligations hereunder." (Ex. 1, YOI Agreement § 8.22.) Beyond that, YOI fraudulently induced Metro to assign the contract, falsely stating that there would be no difference between YOI and YOA, when the differences are fundamental.

## I. The Parties.

1. The Metropolitan Government of Nashville and Davidson County, Tennessee ("Metropolitan Government" or "Metro"), is an incorporated legal subdivision of the State of Tennessee.

2. Defendant Youth Opportunity Investments, LLC ("YOI"), is a limited liability corporation organized under the laws of Indiana and authorized to do business in the State of Tennessee. YOI may be served through its Registered Agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

3. Defendant Youth Opportunities of America, LLC ("YOA), is a limited liability corporation organized under the laws of Indiana. YOA was formerly registered to do business in the State of Tennessee, but its status as a foreign limited liability corporation has been revoked. YOA may be served through its Registered Agent, Ronald D. Hunter, 12775 Horseferry Road, Suite 230, Carmel, Indiana 46032.

## II. Jurisdiction and Venue.

4. The Court has jurisdiction over this matter under Tennessee Code Annotated § 16-11-102.

5. Venue is proper in the Court as the events giving rise to the claims herein occurred in Davidson County. Additionally, under Section 8.26 of the contracts at issue, the defendants consented to the exclusive jurisdiction and venue of Davidson County courts. (Ex. 1, YOI Agreement § 8.26; Ex. 2, YOA Agreement § 8.26.)

## III. Facts.

### A. The YOI Agreement.

6. YOI owns and operates clinical treatment centers for minors.

7. In 2015, YOI entered into a competitive bidding process for a Metropolitan Government contract for juvenile justice facility management services. YOI was awarded the contract and entered into an agreement with Metro in 2016 to manage a juvenile detention facility in Davidson County, Tennessee. YOI provided services under that contract from 2016 to 2021.

8. In 2020, YOI again entered into a competitive bidding process for the Metro contract for juvenile justice facility management services. On December 1, 2020, YOI was notified that it was selected for the contract, subject to successful negotiations.

9. YOI subsequently entered into an agreement with Metro to manage the same juvenile detention facility located in Davidson County, Tennessee (the "YOI Agreement"). (Ex. 1, YOI Agreement.)

10. Pursuant to Exhibit B of the YOI Agreement, YOI was required to, in part:

- Provide Operational and Management services for the Juvenile Detention Facility, including safety, security, housing, and programing.
- Ensure the Facility is Operated in accordance with federal, state, and local standards and laws, as well as Metro Juvenile Court policies, rules, and regulations.
- Provide for the care, welfare, control, safety, and security of juveniles in detention on a twenty-four hour per day / 7 day per week basis.
- Maintain a central control center that is staffed and operated at all times.
- Maintain a corporate office infrastructure to provide for the fiscal management of the facility, including the capacity for administrative oversight and legal counsel.
- Recruit, hire, and train all facility personnel.
- Provide and maintain a comprehensive transition, activation, and occupation plan for Metro Juvenile Court.
- Use and implement any and all Assessment Tools recommended and approved by the Juvenile Court Judge.
- Carry sufficient insurance, as defined by the Agreement.

(*Id.*)

11. Unlike the 2016 contract, the 2021 contract allowed for financial penalties if YOI failed to fulfill certain requirements, including maintaining adequate staffing.

12. The effective date of the YOI Agreement was March 3, 2021.

13. The YOI Agreement's term was 60 months, and the estimated value was $28,000,000. (*Id.* at §§ 3.1, 4.1.)

**B.  YOI's Request to Assign the Agreement.**

14. On June 22, 2021, Gary Sallee, YOI's Chief Legal Officer, sent an email to several members of the Metropolitan Government, requesting that the YOI Agreement be assigned to a new company, Youth Opportunities of America, LLC.

15. In his email, Sallee stated:

> As I advised you in our conversation, Youth Opportunity Investments, LLC is in the midst of refinancing its loan facilities with a health care lender that requires moving the contract for management of the Davidson County Juvenile Detention Center to a sister company (owned by the same partners as YOI), Youth Opportunities of America, LLC. It will have the same address as YOI, the same owners, and the DCJDC will have the same employees, managers, etc. ***The only noticeable difference will be the check from METRO will go to YOA instead of YOI.***

(Ex. 3, Sallee email dated July 22, 2021 (emphasis added).)

16. Section 8.22 of the YOI Agreement provides that YOI may only assign its rights and obligations under the Agreement with Metro's prior written consent:

> The provisions of this Contract shall inure to the benefit of and shall be binding upon the respective successors and assignees of the parties hereto. Except for the rights of money due to CONTRACTOR under this Contract, neither this Contract nor any of the rights and obligations of CONTRACTOR hereunder shall be assigned or transferred in whole or in part without the prior written consent of METRO. Any such assignment or transfer shall not release CONTRACTOR from its obligations hereunder.

(Ex. 1, YOI Agreement § 8.22.)

17. Based upon YOI's representations, Metro agreed to permit the assignment. The assignment, signed on July 1, 2021, states:

> For value received, Youth Opportunity Investments, LLC, an Indiana Limited Liability Company (YOI), whose address is 12775 Horseferry Road, Second Floor, Carmen, Indiana 46032, hereby assigns and otherwise transfers to Youth Opportunities of America, an Indiana limited liability company (YOA), whose address is 12775 Horseferry Road, Second Floor, Carmen, Indiana 46032, all rights title and interest held by YOI in and to the contract . . . .

(Ex. 4, Assignment.)

18.     The assignment is signed by Ronald D. Hunter. Hunter was at all times relevant hereto the CEO of both YOI and YOA. (*Id.*)

19.     YOA and Metro then entered into a Juvenile Detention Facility Operation and Management Services Agreement ("YOA Agreement") with an expected start date of August 3, 2021. (Ex. 2, YOA Agreement.)

**C.      YOA's Unlawful Breach of the Agreement.**

20.     YOA performed under the YOA Agreement from August 2021 to May 2022.

21.     On May 6, 2022, YOA sent a letter to Metro in which it stated that it was unilaterally terminating the contract as of June 5, 2022. (Ex. 5, Termination Letter.) The letter was signed by Ronald D. Hunter.

22.     YOA had no legitimate basis to terminate the Agreement. (*See* YOA Agreement, § 5.) Section 5.1, Breach, states:

> Should CONTRACTOR fail to fulfill in a timely and proper manner its obligations under this Contract or if it should violate any of the terms of this Contract, METRO shall identify the breach and CONTRACTOR shall cure the performance within thirty (30) days. If CONTRACTOR fails to satisfactorily provide cure, METRO shall have the right to immediately terminate this Contract. Such termination shall not relieve CONTRACTOR of any liability to METRO for damages sustained by virtue of any breach by CONTRACTOR.

(*Id.*)

23.     YOA subsequently agreed to continue to fulfill the Agreement until July 1, 2022. Metro, however, was required to obtain an emergency contract for juvenile justice facility management services through another company.

**D.      YOI's Sleight of Hand.**

24.     YOI had a history of problems under the Agreement:

   a. In 2017, a juvenile, under the supervision of YOI employees, was able to escape through a bathroom before falling through a ceiling.

b. In 2019, four teenagers escaped from the downtown detention center following mistakes made by YOI employees, including how the offenders tricked staff into letting them ride the elevator to the basement and how one employee waited 30 minutes to call police.

c. In 2020, YOI's President was brought before the Metro Council to face criticism about how easily the teens were able to escape.

d. While YOI's contract was renewed in 2021, the new contract allowed for financial penalties if YOI failed to fulfill certain requirements, including maintaining adequate staffing.

e. In the months leading up to the assignment to YOA, YOI had escalating staffing problems, including high turnover and excessive overtime hours for staff.

25. On information and belief, YOI sought to extricate itself from the YOI Agreement and used the assignment to YOA in an effort to insulate YOI's assets from liability for the breach.

26. YOI did not disclose that YOA lacked sufficient financial assets to complete the obligations of the Agreement. To the contrary, YOI falsely stated: "[YOA] will have the same address as YOI, the same owners, and the DCJDC will have the same employees, managers, etc. The only noticeable difference will be the check from METRO will go to YOA instead of YOI." (Ex. 3, Sallee email dated July 22, 2021.)

27. In fact, the differences between YOI and YOA were significant. YOI is a thriving business with numerous locations nationwide, and an estimated annual revenue of $300 million. According to its website, YOI operates 28 locations nationwide, has over 1,500 trained team members, and offers a full suite of services.

28. YOA, on the other hand, has and had virtually no assets or revenue. Indeed, during a November 2023 meeting between Metro and Sallee, Sallee informed Metro that YOA had only $80,000 in assets.

### E. Metro's Damages.

29. As a result of YOI/YOA's breach, Metro was forced to obtain an emergency contract through another company, Rite of Passage, Inc., suffering damages by virtue of having to seek and obtain such a contract at short notice and at greater cost.

30. Under the YOI/YOA Agreements, the contract price was calculated based on an occupancy (per head) basis. (Ex. 1, YOI Agreement, Ex. A – Pricing; Ex. 2, YOA Agreement, Ex. A – Pricing.) Using occupancy figures for the relevant timeframe and pricing under the YOI/YOA Agreements, the cost to Metro would have been $7,567,454.04.

31. Under the emergency contract with Rite of Passage, however, the cost to Metro was $9,458,594. Thus, YOI/YOA's breach cost Metro $1,891,139 ($9,458,594.02 – $7,567,454.04) in increased occupancy costs.

32. Additionally, the YOI and YOA Agreements establish liquidated damages for certain forms of non-performance, stating:

> The parties agree that Metro will incur costs and losses in the event of Contractor's failure to perform the required functions listed below and that precise computation of those costs and losses would be difficult. Accordingly, the parties agree that $10,000 per documented incident of nonperformance represents a reasonable estimate of the damages Metro is likely to incur and that such amounts may be assessed to Contractor as liquidated damages, and not penalties.

(Ex. 1, YOI Agreement, Ex. B – Scope of Services; Ex. 2, YOA Agreement, Ex. B – Scope of Services.)

33. The Agreements specify the following categories of non-performance as "constitut[ing] grounds for the assessment of liquidated damages:

- o Repeated, documented incidences of the failure to comply with mandatory staffing ratios;
- o Repeated, documented incidences of the failure to comply with the Department of Children's Services solitary confinement regulations;
- o Repeated, documented incidences of failure to support approved programming provided to the juveniles at no additional cost to the Contractor;
- o Repeated, documented failures to report incidents to Metro Nashville Police Department, Department of Children Services , and/or the Contract Monitor as may be specified by the contract or as required by applicable law or policy; and,
- o Repeated, documented incidences of the introduction of contraband into the facility.

(*Id.*)

34. Finally, the Agreements provide for cost and fee shifting "in the event METRO prevails" in any action to enforce the Agreement or remedy any breach, stating:

> CONTRACTOR agrees that in the event either party takes legal action to enforce any provision of this Contract or to obtain a remedy for any breach of this Contract, and in the event METRO prevails in such action, CONTRACTOR shall pay all expenses of such action incurred at any and all stages of the litigation, including costs, and reasonable attorney fees for METRO.

(*Id.* at § 8.21.)

35. On March 30, 2023, and September 15, 2023, Metro sent letters to YOA demanding payment for its loss due to its breach.

36. To date, both YOI and YOA have failed to make Metro whole.

## COUNT I
### (Breach of Contract)
### Defendants YOI and YOA

37. The Metropolitan Government incorporates paragraphs 1-36 as if set forth herein.

38. The Metropolitan Government and YOI entered into an agreement under which YOI agreed to manage a juvenile detention facility located in Davidson County. (Ex. 1, YOI Agreement.)

Page 9 of 12
Case 3:25-cv-00643    Document 1-1    Filed 06/10/25    Page 11 of 14 PageID #: 15

39. The YOI Agreement was supported by sufficient consideration.

40. Metro performed its obligations under the YOI Agreement.

41. On July 22, 2021, Gary Sallee, Chief Legal Officer for YOI, sent an email to Metro, requesting that the YOI Agreement be assigned to YOA.

42. Metro agreed to assign the Agreement to YOA.

43. On May 6, 2022, YOA sent a letter to Metro stating that it was unilaterally terminating the Agreement. (Ex. 5, Termination Letter.) YOA had no legal basis to terminate the Agreement, and its termination constitutes a breach.

44. In addition, while the Agreement was assigned to YOA, YOI remained responsible under Section 8.22 of the Agreement, which states: "Any such assignment or transfer shall not release CONTRACTOR from its obligations hereunder." (Ex. 1, YOI Agreement § 8.22.)

45. Because of YOI and YOA's breach, Metro was required to obtain an emergency contract through another company, suffering damages by virtue of having to obtain such a contract at short notice and at greater cost.

46. YOI and YOA's breach caused the Metropolitan Government compensatory damages of $1,891,139. Additionally, the Agreements provide for liquidated damages and attorney's fees, and Metro is entitled to prejudgment interest and costs.

## COUNT II
### Fraudulent Inducement
### Defendant YOI

47. The Metropolitan Government incorporates paragraphs 1-46 as if set forth herein.

48. When YOI requested that the Metropolitan Government assign the Agreement to YOA, YOI made false statements concerning facts material to the transaction. Specifically, YOI stated that "[YOA] will have the same address as YOI, the same owners, and the DCJDC

will have the same employees, managers, etc. The only noticeable difference will be the check from METRO will go to YOA instead of YOI." (Ex. 3, Sallee email dated July 22, 2021.)

49. These facts were false and YOI knew that these facts were false.

50. YOI intended for the Metropolitan Government to rely on its false statements and material omissions and Metro did reasonably rely on YOI's statements in agreeing to assign the Agreement to YOA.

51. YOI had a duty not to mislead the Metropolitan Government about YOA's ability to perform the Agreement and financial wherewithal.

52. The Metropolitan Government was injured as a result of its reliance on YOA's false and misleading statements.

53. The Metropolitan Government suffered compensatory damages in the amount of $1,891,139. Additionally, the Agreements provide for liquidated damages and attorney's fees, and Metro is entitled to prejudgment interest.

**PRAYER FOR RELIEF**

The Metropolitan Government prays for the following relief:

1. A jury trial on all claims so triable;

2. Compensatory damages in the amount of $1,891,139;

3. Prejudgment and postjudgment interest and costs;

4. Attorney's fees; and

5. Any other relief to which it is entitled.

Respectfully submitted,

s/ Kevin C. Klein
Kevin C. Klein (#23301)
Brooke K. Schiferle (#33659)
Matthew ("JP") Horton II (#38724)
KLEIN SOLOMON MILLS, PLLC
1322 4th Avenue North
Nashville, Tennessee 37208
(615) 600-4780
kevin.klein@kleinpllc.com
brooke.schiferle@kleinpllc.com
jp.horton@kleinpllc.com

*Counsel for the Metropolitan Government of Nashville and Davidson County, Tennessee*